IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

RYVELIX COMPANY, INC.
Plaintiff
vs
ONSET DERMATOLOGICS;
ABC CORPORATION;
XY INSURANCE COMPANY
Defendants

CIVIL 14-1041CCC

**OPINION AND ORDER**

On November 18, 2013 Ryvelix Company, Inc. (Ryvelix) filed suit in the Puerto Rico Court of First Instance, San Juan Part, against Onset Dermatologics, LLC ("Onset"), under Law 75 of June 24, 1964, 10 P.R. Laws Ann. §§ 278, *et seq.,* as amended ("Puerto Rico Dealers' Act" or "Law 75"), claiming damages for unlawful termination and impairment of a distribution agreement.  The contract is a Pharmaceuticals Specialties Distributor Agreement entered by and between Ryvelix and Triax Pharmaceuticals, LLC ("Triax") on October 10, 2008, pursuant to which Triax appointed Ryvelix as its exclusive authorized distributor for the sale, marketing and distribution of various pharmaceutical specialty products in Puerto Rico (D.E. 4-1).  The complaint alleges that upon Onset acquiring Triax "it assumed all of its obligations together with the Locoid product and became the PRINCIPAL party." (D.E. 1, paragraph 5).  At paragraph 10, plaintiff alleges that Onset notified Ryvelix by letter dated 12/17/2012, of "the termination of the exclusive distribution agreement in violation of what is established in Law 75 of June 24, 1964, (10 L.P.R.A. sec. 278a, Art. 2)."  It seek damages in the sum of $2,750,000.00 under Law 75 for the unlawful termination of the dealership contract and $2,600,000.00 in commissions allegedly generated by the indirect

CIVIL 14-1041CCC                             2

entry into Puerto Rico of "Locoid" via mega companies which sold them in Puerto Rico thereby impairing plaintiff's rights as exclusive distributor of such product. On January 16, 2014, defendant Onset filed an unopposed Notice of Removal based on diversity of jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).

Before the Court now is defendant's Motion to Compel Arbitration filed on January 23, 2014 (**D.E. 4**), plaintiff's opposition (D.E. 7) and defendant's Reply (D.E. 10). Onset invokes the compulsory arbitration provision at Section 8(e) of the distribution agreement which reads:

> If any dispute or difference should arise between the parties, the dispute or difference shall be referred for decision to two arbitrators, one to be selected by Triax [now Onset] and the other by Distributor. In case the two arbitrators so selected cannot agree, they shall select a third arbitrator and the decision of two of the three shall be binding upon the parties hereto. A party which had not appointed an arbitrator shall do within thirty (30) days after being notified in writing by such other party to do so, and in default of appointment such other party's arbitrator may act as sole arbitrator and his decision shall be binding. The decision shall be made by the majority of the arbitrators. The seat of the arbitration shall be in New York, New York, U.S.A. and the decision of the arbitrators shall be final.

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*, "[a] written provision in [. . .] a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract and transaction, or the refusal to perform the whole or any part thereof, [. . .] shall be valid, irrevocable and enforceable save upon such grounds as exist at law." 9 U.S.C. § 2. The standard governing a petition to compel arbitration is well established. Where there is an agreement to arbitrate, the FAA reflects a strong federal policy favoring arbitration. HIM Portland, LLC v. DeVito Builders, Inc., 317 F.3d 41, 43 (1st Cir. 2003). Federal law mandates rigorous enforcement of agreements to arbitrate, Perry v. Thomas, 482 U.S. 483, 490 (1987). The Federal Arbitration Act

CIVIL 14-1041CCC                              3

"creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate." <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 25, n. 32, 103 S. Ct. 927, at 942, n. 32 (1983).

"By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial forum." <u>Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.</u>, 473 U.S. 614, 628, 105 S.Ct. 3346, 3354 (1985). "And so long as the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function. <u>Mitsubishi</u>, 473 U.S. at 637, 105 S.Ct. at 360.

Where a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring in such costs.  In <u>Green Tree Financial Corp-Alabama v. Randolph</u>, 531 U.S. 79, 91, 121 S.Ct. 513, 522 (2000), the Court found that unsupported statements that arbitration costs were "high" and that the party "did not have the resources to arbitrate" provided "no basis on which to ascertain the actual costs and fees to which she would be subject to arbitration."  In the instant case, Ryvelix does not question that its Law 75 claims against Onset fall within the scope of the arbitration clause. Rather it seeks to avoid arbitration as unenforceable asserting that: (1) the costs of arbitration, given its current financial situation, would be unreasonable and unjust, thereby depriving it of its day in court and, (2) the contractual forum is difficult and inconvenient.

Ryvelix argues that it initially had the financial capacity to participate in an arbitration process, but its earnings have dropped since 2011 allegedly due to Onset's breach of contract, a matter which goes to the merits, and poor

CIVIL 14-1041CCC                    4

economic conditions in Puerto Rico.  It avers, as an example, that in 2011 it had seven (7) full-time employees and one (1) part-time employee, that in 2012, it had  five (5) full-time employees and since February 2013 it has one (1) full-time employee and three (3) part-time employees.  Ryvelix has not submitted any evidence in support of  its contention that arbitration costs and the selected forum would be prohibitively expensive.  The above are but threadbare statements which do not constitute a showing of prohibitive expense that would justify invalidating the arbitration agreement which it subscribed.  In sum, Ryvelix has not met its burden of proving that the costs of arbitration are so substantial that it cannot meet them and that it is placed at risk of being unable to vindicate its statutory rights in the arbitral forum, as opposed to the judicial forum.

I.	The *Rebus Sic Stantibus Doctrine*

Ryvelix also alleges that under Puerto Rico law, the doctrine of *rebus sic stantibus* makes the present arbitration clause enforceable.  *Rebus sis stantibus* is a clause deemed implicit in contracts that serves to adjust the debtor's obligation or rescind the contract when unforeseeable circumstances render compliance extremely burdensome for one of the parties.

In Casera Foods, Inc. v. E.L.A., 108 D.P.R. 850, 853-855, 8 Official Translations 914 (1979) the Court addressed the requirements of this doctrine; foremost among the conditions for its appreciation is that there be "very special and extraordinary circumstances".  After examining the elements which justify the existence of this remedy, the Court cautioned: "[w]e emphasize the fact that all these elements must be present at the same time and stress the extraordinary character of this remedy, which should be employed only in exceptional instances requiring a judicious and scrupulous moderating judicial

CIVIL 14-1041CCC	5

discernment. 'We cannot over-emphasize the need for greater caution in the application of these technical proceedings which, if misused, could entail the loss of contractual security.'"

Ryvelyx's self serving and conclusory arguments regarding its difficult financial situation raised without supporting evidence with regard to the alleged prohibitive costs of arbitration are now rehashed in the context of the *rebus sic stantibus* doctrine's applicability. The plaintiff's opposition (D.E. 7) relies solely on the principal's alleged breach of the dealer's contract to justify the application of the *rebus sic stantibus* doctrine.  It asserts that it could not anticipate that the defendant could breach the dealer's contract between them, thereby creating the financial hardship which plaintiff claims makes arbitration impossible.  This is a misapprehension of the nature of the concept underlying the *rebus sic stantibus* doctrine for this is a theory on reviewing contracts because of a change of circumstances.  See Casera Foods, Inc. v. E.L.A., 108 D.P.R. 850, 853-855, 8 Official Translations 914 (1979).  That is, it is a principle of reviewing a contract to determine whether an extraordinary disturbance or circumstance has arisen which was unforeseeable and which, upon judicial review, it is determined that the contract may be rescinded or its effects suspended.  The principles of law underlying this doctrine apply to a review of the contractual relationship as a whole in order to determine whether the obligations arising from the contract should be nullified or modified.

In this case, plaintiff dealer has focused on one clause of the contract, the arbitration clause set forth in section 8E.  It does not seek that the Court in its review of the contract, pursuant to the *rebus sic stantibus* theory apply said principle to the contract as a whole.  It argues instead that because the

CIVIL 14-1041CCC                                6

principal breached its obligations under the contract, the arbitration clause which is a part of the same should not be enforced.

In any Law 75 action, the principal issue is whether there was just cause for termination of the dealer's contract. "Just cause" is defined at § 278(d) of the Dealer's Act as follows:

> (d) *Just cause*.—Nonperformance of any of the essential obligations of the dealer's contract, on the part of the dealer, or any action or omission on his part that adversely and substantially affects the interests of the principal or grantor in promoting the marketing or distribution of the merchandise or service.—June 24, 1964, No. 75, p. 231, § 1; June 23, 1966, No. 105, p. 331, § 2.

In the event that there is a determination on the merits that no just cause existed for the termination of the dealer's contract or refusal to renew the same, § 278b provides that "the principal shall have executed a tortious act against the dealer and shall indemnify it to the extent of the damages caused." That same statutory provision establishes a formula which lists certain factors to determine the amount of indemnification.

There is no dispute in this case that the parties voluntarily agreed to submit all disputes related to the dealership relationship to arbitration. Whether the termination of that relationship was with or without cause is a matter to be determined in the arbitral forum, as agreed to in their dealership contract. It was their consensual determination that an arbiter decide whether cause exists for the termination. A review of the dealer's contract between the parties, within the ambit of the *rebus sic stantibus* doctrine, does not allow for rescission, nullification or modification of the dealership agreement in the manner proposed by plaintiff. Absent a showing that the costs of arbitration is prohibitive, an argument already disposed of as lacking foundation, there is no legal basis for applying the *rebus sic stantibus* concept to eliminate only the arbitration clause of the agreement.

CIVIL 14-1041CCC                              7

    For the reasons stated, we GRANT defendants' Motion to Compel Arbitration (**D.E. 4**) and DISMISS the case, without prejudice.  Judgment dismissing the case shall be entered on this same date.

    SO ORDERED.

    At San Juan, Puerto Rico, on September 30, 2014.

                                        S/CARMEN CONSUELO CEREZO
                                        United States District Judge